# J. B. DIONISI & COMPANY

*v.*

# SUCCESSION OF JUAN PUIG CANALS.

San Juan, Law, No. 619.

BREACH OF CONTRACT AND DAMAGES RESULTING THEREFROM.

1. Under §§ 1387 et seq. of the Civil Code of Porto Rico of 1902, it appears

J. B. Dionisi & Co. v. Succession of Juan Puig Canals.

that as to the sale of personal property the well-known common-law doctrine of *caveat emptor* does not obtain in Porto Rico, and the warranty that goes against hidden defects enables a purchaser, in the absence of any stipulation to the contrary, to rescind the contract within six months.

2. See a case where the jury held, under the instructions of the court, on the facts that the test made of the plant and machinery at the time of the sale was a waiver of the statutory warranty.

Case tried November 24, 1909.

Messrs. *Paine* and *Massari,* for plaintiffs.

Mr. *Martin Travieso, Jr.,* for defendants.

The facts in this case were that the ancestor of the defendants sold a distillery to the plaintiffs. The latter were not satisfied with the bargain, and, under § 1387 of the Civil Code of Porto Rico of 1902, on the last day of the six months' limitation, notified defendants that they would rescind the contract and demand their money back with damages, hence this suit. The rest of the facts sufficiently appear from the instructions which RODEY, Judge, gave to the jury as follows:

This suit is brought by the plaintiffs J. B. Dionisi & Company, composed of Juan B. Dionisi, Pedro Olivari, Angel Santoni, and Juan Paravasini, against the succession of Juan Puig Canals represented by José P. Canals. The suit, as you have seen, is primarily for the rescission of a contract, and for damages under it. Their complaint alleges that the purchase price was the sum of $7,500 and that the damage under it is $7,250,

and hence their prayer is for a judgment at the hands of the court and the jury in the sum of $14,750, with interest and costs. That, of course, is the limit of their claim as they make it in their complaint.

The answer to that, as you have seen, is that these defendants have kept all of their bargain and agreement with the plaintiffs, and hence that they owe them nothing, but claim that the plaintiffs owe them a $1,500 note which is due now, and the interest on it, and the rent of the premises for as many months as may be due under this lease that has been introduced in evidence, at the rate of $50 a month.

Now, when this case first came to the attention of the court,— I may as well state this to the native Porto Ricans on the jury who have not lived in the States, that the doctrine to us is rather peculiar that the seller must warrant rather than the purchaser beware, but § 1387 of the Civil Code of Porto Rico reads as follows: The vendor is bound to give a warranty against hidden defects which the thing sold may have, should they render it unfit for the use for which it was destined, or if they should diminish said use in such manner that, had the vendee had knowledge thereof, he would not have acquired it, or would have given a lower price for it; but said vendor shall not be liable for the patent defects, or those which may be visible, neither for those which are not visible if the vendee should be an expert, and who, by reason of his trade or profession, should easily perceive them. The vendor is liable to the vendee for the warranty against faults or hidden defects in the things sold, even when they should be unknown to him. This provision shall not obtain if the contrary should have been stipulated, and the vendor should not have been aware of said faults or hidden defects.

J. L. Dionisi & Co. v. Succession of Juan Puig Canals.

Now that is about all, except that any benefit of this must be taken advantage of within six months, and so on. Generally, on all the evidence, it is for you to say whether the minds of these people met. I first thought that the statute was a radical departure from what we are used to, but it does not seem to be so much of a departure. If the minds of the people did not meet there would be no contract between them, so that it resolves itself to the question of fact, measured by the evidence whether or not these men's minds ever met and executed a final contract between each other. In making up your minds as to that, take into consideration all the surrounding circumstances as to whether one went to the other rather than the other coming to him, and whether they entered into an agreement and bargain, and made this test of the machinery to be final there at the time. And if you believe from a preponderance of the evidence that the seller Mr. Puig, when he sold, had that test made and the other man went there, and it was intended beforehand that that should be a finality between them, and that it was a finality, then that ends the whole controversy, and you should find for the defendants squarely and without hesitation. But if, on the other hand, you believe that it was not a final test, and that they left other things to be done, they must have left the whole contract still open, because if they only left the mere question of the tank open, then the plaintiff could not repudiate the whole contract, but only as to the tank, and under those circumstances you could find for the plaintiff only the amount that he paid for, or what it cost him to fix the tank, etc., if he had brought a suit for that, but he has not brought that kind of a suit, and in such case you should find for the defendant.

So this case resolves itself on a preponderance of the evidence

to the question of whether or not these men ever really closed that bargain between them. If they did, you should find for the defendants, and you should find for the plaintiffs if they did not.

As to the damages for either of the parties on the whole case, if you should find for the plaintiffs they are entitled, in the court's opinion, to have returned to them the purchase price, with the interest on that at the rate they were paying on the notes. They were paying 12 per cent on those notes, so it would be fair for them to collect that rate of interest, and also to give them back the money that they put into the plant in improvements, which they say was $500. But the losses on the business that they say they have incurred, I will have to instruct you that that is too remote and not sustained by the evidence; and the anticipated profits I will have to instruct that they could not recover for either, so if you find for the plaintiffs, they are entitled to $7,500 and 12 per cent interest on it since the date they gave it up, and $500 he put into the place in improvements, and such damages as you may believe he has really been put to. I will instruct you that you might allow him something for damages over the $500, such as you might believe he really suffered by reason of having been in possession of this place for this length of time.

Now, I call your attention to this proposition: You must look into the facts, and endeavor to arrive at the good faith of the parties. On the one hand, Mr. Dionisi must not lose any rights by the fact that his vendor died. The heirs could not have any more rights than the deceased had. On the other hand, Mr. Dionisi cannot be permitted to make a complete contract, and buy a place of business, and go into it and see whether

J. B. Dionisi & Co. v. Succession of Juan Puig Canals.

he could make anything out of it or not, and then, the day before the statute of limitations expired, repudiate the whole thing and bring a suit to recover damages. The business interests of the country require juries not to give a verdict in that kind of a case when the parties are not acting in good faith, and the law does not permit it, either.

If, on the other hand, this man died before he had finished the contract, and if there was no complete contract between them, and the test was not so intended, then you should find for the plaintiff without hesitancy. You may also take into consideration the fact of paying interest and paying rent in considering the question as to whether or not Mr. Dionisi considered this contract as complete between the parties.

Offers of compromise do not bind the parties. It is fundamental in law that if you have a dispute with a man, and you go and offer him the best of the bargain in the way of a settlement, unless he accepts that then and there, it does not avail either of you in a suit in court.

The parties have exactly equal rights before you. You, by your verdict, can ruin nobody, and you can favor nobody, and that sort of statements by counsel should not be heeded. The court and you must be absolutely neutral. Take the papers in this case and study the matter as good, practical, sensible men on the law as here given you.

You will see from the forms of verdicts which I have given you what the court intends. One will read: "We, the jury, find for the plaintiffs, and assess their damages in the sum of blank dollars." Now in that, you may include, if you find for them, the $7,500 and the 12 per cent interest on it. That is the whole purchase price, although there are notes outstanding

V. Porto Rico—16.

J. B. Dionisi & Co. v. Succession of Juan Puig Canals.

for part of it. You will see in the other verdict how those are taken care of, which are due. I shall hold that the defendant may pay the amount of the judgment by turning into court those notes, in case you find for the plaintiffs; and then any damages you may find these plaintiffs entitled to, such as the $500 for the improvements which they claim to have put there, and any losses they may have been put to generally, but anticipated profits I will have to strike out.

Now the other verdict, in case you find for the defendants, will read: "We, the jury, find for the defendants as to the main contract, and further find that the plaintiff owe the defendants the note for $1,500 that is now due, with interest thereon as per its terms, as well as all rent accrued under the lease for the premises occupied under the terms of the lease." So you will see that, while the first verdict is a plain one, it settles the controversy between the parties, and the second one, while it is comprised in more words, explains its object.

You may take to your room the contract, the plan, the exhibits, and the complaints, and the answer and counterclaim. You can see that your verdict includes the counterclaim if you find for the defendants.

Now, gentlemen, the court desires to impress upon you that this is a pure business matter for practical and sensible men to decide when you find the facts, and say what is the truth between these people, and did they make this contract, and was it final (save for this tank matter), and if they did that, then find for the defendants. If they did not do that, and the whole contract was still open after the test made, then find for the plaintiffs, under the instructions as given you. When you have done that, the court and everybody else must be satisfied. No-

body can question you for your verdict in this case. You only are bound by your oaths and your consciences. And the court feels that you will make all reasonable efforts to arrive at a verdict. These trials are expensive to the government and to the parties, and the court expects that you will make a reasonable effort to arrive at a verdict. When you have arrived at a verdict you will all return it into court. The case is with you, gentlemen.

The verdict of the jury was for the defendant.